IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASON DAVID HUTTON,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br><br>    Defendant.<br>_____/ | No. C 09-05388 CRB<br><br>**ORDER GRANTING SUMMARY JUDGMENT** |

Plaintiff sought disability benefits from the Social Security Administration. He was unsuccessful in obtaining those benefits, and this lawsuit followed. The Court has reviewed the parties' submissions and the administrative record. Plaintiff obviously suffers an assortment of impairments of varying severity, and the record contains evidence that would have supported a finding of disability. However, notwithstanding that evidence, substantial evidence also supports the Administrative Law Judge's ("ALJ") decision that Plaintiff is not disabled. Accordingly, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED.

**I.    BACKGROUND**

Plaintiff was born in 1972. Tr. at 108. He was a member of the United States Army Airborne for six years, from 1991 through 1997, before eventually receiving a General Discharge. Tr. at 131, 381, 391. He attended welding school and worked as a welder/fabricator from 1997 to 2001 and as a truck driver from 2001 to 2004. Tr. at 131.

Plaintiff alleges that he became disabled on August 1, 2004 because of a combination of mental and physical impairments. Tr. at 124.

Plaintiff applied for Social Security Disability benefits in January 2007. Tr. at 106-112. His case eventually came before an ALJ, who issued a decision denying benefits on March 17, 2009 following a November 20, 2008 hearing. Tr. at 30-64, 13-29. The ALJ proceeded through all 5 steps of the sequential evaluation process. See 20 C.F.R. § 416.920. Among other things, the ALJ concluded that Plaintiff had the following severe impairments: "low back, neck, and knee pain; carpal tunnel syndrome (CTS); and headaches . . . ." Tr. at 18 (internal record citations omitted). However, the ALJ also concluded that Plaintiff's tinnitus and post-traumatic stress disorder ("PTSD") were not severe. Id. In particular, the ALJ determined that Plaintiff's "medically determinable mental impairment of post traumatic stress disorder [] does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." Id. at 19. The ALJ's determination on this issue was supported by a Psychiatric Review Technique Form prepared by a state agency medical consultant (Dr. K.D. Gregg) which reached the same conclusion. Id.; see also id. at 248. The ALJ did not credit the opinions of various Veterans Affairs doctors, finding that record evidence did not support those doctors' conclusions regarding the severity of Plaintiff's mental impairment. Id. at 26. In making that decision, the ALJ noted, among other things, the following with respect to the record regarding Plaintiff's mental impairment:

- No reported complaints until 2006-2007 after discharge from military in 1997;
- Plaintiff attended and had reasonable success in school;
- Plaintiff, with one exception, said he left jobs because he was able to get better jobs not because of impairments;
- Limited treatment notes supporting claimed severity of PTSD;
- Inconsistencies between Plaintiff's testimony and military records casting doubt on his credibility.

Id. at 26-28.

2

1    The ALJ eventually found that, although Plaintiff had several severe impairments as
2 well as non-severe PTSD, "the claimant has the residual functional capacity [] to perform
3 light work . . . ." Id. at 22.  Accordingly, the ALJ found that Plaintiff was not disabled.  The
4 Appeals Council denied Plaintiff's request for review on September 16, 2009, and this
5 lawsuit followed.

6    Plaintiff sets forth three claims of error committed by the ALJ.  First, that the ALJ
7 failed to evaluate and find Plaintiff's PTSD and depression "severe" at step two.  Second,
8 that the ALJ failed to credit the opinions of treating Veterans Affairs doctors without a valid,
9 legitimate reason for doing so.  Finally, that the ALJ rejected third party statements without
10 providing clear and convincing reasons for doing so.

## II.   LEGAL STANDARD

The court has jurisdiction to review the Commissioner's decision denying benefits pursuant to 42 U.S.C. § 405(g).  However, the district court's scope of review is limited.  The Commissioner's decision (here the decision of the ALJ) will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  42 U.S.C. 405(g); Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).  Evidence is substantial if it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  Sandgathe v. Charter, 108 F.3d 978, 980 (9th Cir.1997).  To determine whether substantial evidence exists, the court examines the administrative record as a whole, and considers evidence both supporting and detracting from the Commissioner's conclusion.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Where evidence exists to support more than one rational interpretation, the court must defer to the ALJ's decision.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); Sandgathe, 108 F.3d at 980.

To qualify for disability benefits under the Social Security Act, the claimant must be "disabled."  Disability means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment (or combination of impairments) which can be expected to result in death or to last for a continuos period of not

3

1  less than twelve months.  <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1004 (9th Cir. 2005).  The
2  claimant has the burden of proving that he is unable to perform past relevant work.  <u>Id.</u>
3  Where the claimant meets this burden, a prima facie case of disability is established.  <u>Thomas</u>
4  <u>v. Barnhart</u>, 278 F.3d 947, 955 (9th Cir. 2002). The Commissioner then bears the burden of
5  establishing that the claimant can perform other substantial gainful work that exists in the
6  national economy.  <u>Id.</u>

7    Social Security disability cases are evaluated using a five-step, sequential evaluation
8  process.  20 C.F.R. § 404.1520.

9    In the first step, the ALJ determines whether the claimant is presently engaged in
10 substantially gainful activity.  20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled;
11 otherwise the evaluation proceeds to step two.

12   In step two, the ALJ determines whether the claimant has an impairment or a
13 combination of impairments that is severe.  20 C.F.R. § 404.1520(c).  If the claimant's
14 impairment is not severe, the claimant is not disabled and is not entitled to disability benefits,
15 but if the impairment or combination of impairments is severe, the evaluation proceeds to
16 step three.

17   In step three, the ALJ must determine whether the claimant's impairment or
18 combination of impairments meets or medically equals the requirements of the Listing of
19 Impairments, 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d).  If the claimant's
20 condition meets or exceeds the requirements of a listed impairment, the claimant is disabled.
21 If not, the analysis proceeds to step four.

22   At step four, the ALJ first determines the claimant's residual functional capacity in
23 view of the claimant's impairments and the relevant medical and other evidence in the
24 record, and then determines whether the claimant is able to do any work that he previously
25 performed in the past.  If the claimant can still perform work that he has done in the past, the
26 claimant is not disabled.  If he cannot perform the work, the evaluation proceeds to step five.
27 20 C.F.R. § 404.1520(e) and (f).
28

4

1   At step five, the burden shifts to the Commissioner to demonstrate that the claimant is
2   not disabled.  Taking into account a claimant's age, education, vocational background, and
3   residual functional capacity, the Commissioner must show that the claimant can perform
4   some work that exists in significant numbers in the national economy. This can be shown
5   either by the testimony of a vocational expert or by reference to the Medical-Vocational
6   Guidelines ("grids").  Tackett, 180 F.3d at 1101; 20 C.F.R. § 404.1520(g)(1).

**III.   DISCUSSION**

   **A.   The ALJ Did Not Err At Step Two in Determining That Plaintiff's Mental Impairment was Not Severe and the ALJ Had Legitimate Bases for Not Crediting Plaintiff's Treating Doctors' Opinions**

The ALJ based his decision that Plaintiff's mental impairment was non-severe largely on the opinion of K.D. Gregg, M.D., a state agency psychiatrist who reviewed treatment records and reports. Tr. 245-56.[1] Dr. Gregg founded his opinion on a 2007 diagnosis of PTSD by Dr. Les P. Kalman.  In Dr. Kalman's Evaluation, he concluded that Plaintiff had PTSD but noted that he was able to (1) relate with supervisors and co-workers; (2) deal with the public; (3) do detailed but uncomplicated job instructions; (4) maintain attention and concentration; and (5) withstand the stress and pressures associated with daily work activities.  Tr. 234, 236; see also Case Analysis by Dr. Thornburg, Tr. 245-247.  Because the 2007 diagnosis was based on an independent examination and Dr. Gregg's opinion was based in part on that 2007 diagnosis, both are substantial evidence supporting the ALJ's non-severity determination.  See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001); Fliss v. Astrue, 284 Fed. Appx. 442 (9th Cir. 2008).

\* \* \*

It is true, as Plaintiff points out, that the record contains countervailing evidence from which the ALJ might have concluded that Plaintiff's mental impairment was severe. But there were rational reasons for the ALJ to have discounted that evidence.

---

[1] A severe impairment is one that "significantly limits [] physical or mental ability to do basic work activities . . . ."  20 C.F.R. 416.920(c).

United States District Court
For the Northern District of California

First, Plaintiff argues that the ALJ ignored Plaintiff's low Global Assessment Functioning ("GAF") scores (in the 40-50 range) which purportedly show that he is severely impaired. However, the GAF scale is not a substitute for the mandated severity analysis. 65 Fed. Reg. 50746-01. Indeed, the doctor upon whom Dr. Gregg relied in making his determination of a non-severe impairment assigned Plaintiff a GAF of 50 but also determined that Plaintiff "would be able to relate with supervisors and coworkers, deal with the public, do detailed, but uncomplicated job instructions, maintain attention and concentration, and withstand the stress and pressures associated with daily work activities." Pl.'s Mem. in Sup. of Mot. for S.J. at 6.

Second, the ALJ had reasons inherent in the medical evidence itself for discounting the opinions of Plaintiff's treating doctors. For example, the ALJ gave little weight to one treating doctor's opinion (Dr. Kevin Mack, Psy. D.) because "it is not consistent with the rest of the evidence. His notes are at best confusing and may be better described as quite inaccurate." From this Court's review of the record, there is substantial evidence to support this conclusion because Dr. Mack's treatment notes are limited and somewhat conculsory. Although it is of course true that doctors prepare notes for reasons other than establishing the bona fides of a disability claim, it is also true that an ALJ does not need to credit opinions which are insufficiently supported by documentation or which conflict with other evidence in the record. Gregg v. Astrue, No. CV-08-0336-CI, 2009 WL 3295117, at *6 (E.D. Wash. Oct. 13, 2009) ("[C]ourts have recognized conflicting medical evidence, incongruity between the doctor's opinions and his own treatment notes and objective data, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints as specific, legitimate reasons for disregarding the treating physician's opinion.") (citations omitted). In addition, another doctor upon whom Plaintiff relied to establish the severity of his mental impairment (Dr. Christine Leyba) did not include any treatment notes to support her psychiatric assessment, and Plaintiff never supplemented the record with those notes even though the record was left open after the hearing. See McCartey v. Massanari, 298 F.3d

6

1072, 1076 (9th Cir. 2002). Finally, although a Compensation and Pension Exam Report authored by Dr. Koller in May 2008 concluded that Plaintiff was totally disabled and unemployable because of PTSD and secondary depression, that same Report also provided that Plaintiff was "capable of all independent activities of daily living." Tr. at 291-294.

Finally, and perhaps most significantly, the ALJ did not credit the medical evidence supporting a finding of severe mental impairment because he found that Plaintiff himself was not credible. Tr. 24. There is substantial evidence in the record to support that determination. For example, Plaintiff was discharged from the military in 1997 and did not complain of PTSD until 2006. In addition, there were some inconsistences in Plaintiff's story about the cause of his PTSD and the severity of his symptoms. For example, Plaintiff's wife filled out a "Function Report" regarding Plaintiff in March 2007. Id. at 153-160. It describes Plaintiff's daily activities as including, among other things, getting dressed, taking medication, having breakfast, doing school work, doing laundry and dishes, playing guitar, opening doors, building fires, attending classes, and sometimes cooking dinners. The Function Report does mention PTSD from military experience, which caused night terrors and general sleep problems, but it also describes Plaintiff engaging in social activities, provides that he is able to deal with authority figures (albeit with some limitation), says that he handles stress okay depending on the situation, and can handle changes in routine "fairly well." Id.[2]

In sum, substantial evidence exists to support the ALJ's determination that Plaintiff's mental impairment is not severe within the meaning of the relevant authority notwithstanding evidence that, had it been credited, would have supported a finding of severity. See Markoe

---

[2] The ALJ's decision says that "[t]he third party statement by his wife . . . says nothing about any problems with PTSD – no hypervigilance, sleep problems, or nightmares – not a word about any of these – only says he does not take "crap" from authority figures." Id. at 24. The ALJ also relied in part on the absence of reported PTSD symptoms in the wife's Function Report in discounting Plaintiff's report of PTSD symptoms in June 2007. Based on this Court's review of the record, the ALJ's characterization of the contents of the Function Report is wrong. Indeed, on the same page on which Plaintiff's wife says that Plaintiff "doesn't take anyone's crap" she also describes Plaintiff as having PTSD causing night terrors resulting in sleep problems. Id. at 159.

Notwithstanding this apparent error on the ALJ's part, this Court concludes that substantial evidence still exists to support the ALJ's decision.

7

1 v. Astrue, No. CV 08-499-S-REB, 2010 WL 1338085, at *7 (D. Idaho Mar. 31, 2010) ("Even though there is evidence that might support a different conclusion, the evidence relied upon by the ALJ, when considered in light of the record as a whole, constitutes substantial evidence in support of the ALJ's finding . . . .").

### B.     The ALJ Properly Dealt with Third Party Evidence

Two lay witnesses provided evidence in support of Plaintiff's claim for disability benefits: Plaintiff's wife and Plaintiff's college counselor. Plaintiff claims that the ALJ discredited his wife's statements without a valid basis for doing so and failed even to discuss the statement of his college counselor.

As to Plaintiff's wife's statement, the ALJ did consider it but found that, on the whole, it described behavior inconsistent with the conclusion that Plaintiff's mental impairment was severe. Tr. 24, 26.[3] The record provides substantial evidence to support this conclusion because, as described above, the wife reports Plaintiff engaged in activities inconsistent with severe mental impairments. With respect to Plaintiff's counselor's statement, the statement was not sufficiently supportive of Plaintiff's claim to require the ALJ to address it. See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). It notes that Plaintiff appeared to be in physical and emotional pain which caused him difficulties in the achievement of his educational goals, but it does not say that he was physically or mentally unable to complete his work. Tr. at 192.

Thus, the ALJ did not err in his treatment of third party evidence.

//
//
//
//

---

[3] As discussed above, the ALJ found the following severe impairments: low back, neck, and knee pain; carpel tunnel syndrome, and headaches. Tr. at 18. Thus, to the extent Plaintiff complains that the ALJ did not properly consider third-party evidence related to physical limitation that argument seems misplaced. Further, the ALJ determined that Plaintiff could not perform any past relevant work because of his impairments. The finding of "not disabled" resulted from the ALJ's decision to credit the vocational expert's testimony that Plaintiff could perform light and unskilled work and that such work existed in sufficient quantity in the national and California economies. Tr. at 29.

8

## IV. CONCLUSION

For the foregoing reasons, the government's motion for summary judgment is GRANTED and Plaintiff's motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: January 12, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE